UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA NAVARRO,<br><br>                          Plaintiff,<br><br>v.<br><br>CHAD F. WOLF, ACTING SECRETARY, DEPARTMENT OF HOMELAND SECURITY,<br><br>                          Defendant. | Case No.: 3:20-cv-0394-L-AHG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

Pending before the Court in this action alleging discrimination and retaliation in violation Title VII of the Civil Rights Act of 1964, is Defendant's motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed an opposition, and Defendant replied. The Court decides this matter on the briefs without oral argument. See Civ. L. R. 7.1.d.1. For the reasons stated below, Defendant's motion to dismiss is granted.

I.  **BACKGROUND**

Plaintiff is a Hispanic American female of Mexican descent, and a citizen of the United States of America.  (Complaint ¶ 2). She is a resident of Imperial County, in the State of California. (*Id*.) At the time she filed her complaint, Plaintiff was employed as a

Group Supervisor, GS-1811-14, with Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS). (Comp. ¶ 3). DHS is a cabinet department of the U.S. federal government, tasked with anti-terrorism, border security, immigration and customs, cyber security, and disaster prevention and management. (Comp. ¶4).

Plaintiff has been employed with ICE for more than 20 years. (Comp. ¶8). During her employment, Plaintiff has received commendations and distinctions including fourteen (14) special act awards for merit and job performance between 1999 through 2016, which included an award for outstanding performance as a Special Agent within ICE, and the JTF-1 Directors Award for Distinguished Service in July 2016. (Comp. ¶11 ((i),(k),(m)). Plaintiff created and supervised multiple programs including the first child Exploitation Investigation Group, and first computer forensic program. (Comp. ¶11 (b),(c)). There have been no complaints resulting in disciplinary action concerning Plaintiff's job performance during her tenure with ICE. (Comp.¶ 10).

In November 2014, Plaintiff informed her supervisor, Ronnie Martinez, that she was interested in becoming an acting Assistant Special Agent in Charge (ASAC). (Ex. 9 at 84 [ECF No. 6-2.]) Plaintiff was informed by Martinez in November 2017 that she would be the acting ASAC after Martinez left for Seattle. (*Id*.) However, on March 15, 2017, Plaintiff learned she was not chosen to serve as Acting Assistant Special Agent in Charge (ASAC) in Calexico, California. (Comp. ¶12). Instead, John Reed (Reed) was placed in the position. (Mot. Ex. 9 at 84). According to Plaintiff, the normal advancement procedures were not followed and she was purposefully excluded. (*Id*.) Plaintiff states that Reed is a white male who had been previously admonished for retaliating against a previous EEO filer. (Comp. ¶13).

On April 25, 2017, the Acting ASAC, Reed, came to Plaintiff's office to discuss her mid-year performance, however he was not her immediate supervisor, did not know her performance, is less experienced and was a junior supervisor. (*Id*. at 86). Instead of conducting the review, Plaintiff claims Reed instructed Plaintiff to sign a form stating the

discussion had occurred and left. Reed purportedly was confrontational with Plaintiff and did not leave when she asked him to. (*Id*.)

During the April 25, 2017, review, Reed misrepresented to Plaintiff that another Special Agent, Robert Robbins, had decided not to join the Financial Group which Plaintiff supervised, despite the fact that Reed had expressed interest in that position. (Comp. ¶14) Plaintiff later learned that Reed had not changed his mind. (Mot. Ex 9 at 86). The addition of Special Agent Reed would have assisted Plaintiff in performing her job. (*Id*.) On the same day, Plaintiff discovered that Acting ASAC Reed falsely told her that a government vehicle could not be assigned to her because it had been assigned to another Special Agent. (Comp. ¶15).

Plaintiff also learned that day that Reed would not return a financial investigation case entitled "Rabobank," to Plaintiff, despite the fact that she was the financial supervisor and one of her agents was assigned to the case. (Mot. Ex. 9 at 90). Instead, Reed was going to keep the case himself. (Comp. ¶16).

On April 28, 2017, Plaintiff learned she was denied the opportunity to serve as an Acting ASAC, and the position was given to someone less experienced and qualified than Plaintiff. (Comp. ¶17). On May 2, 2017, Plaintiff was not allowed to compete for one of three Special Agent in Charge (SAC) positions in San Diego, and a position as a Resident Agent in Charge (RAC) in Oceanside, California. (Comp. ¶18).

On May 30, 2017, Reed berated Plaintiff for moving an employees' cubicle because it was moved to an area that was designated for remodeling. (Comp. ¶19). On November 1, 2017, Plaintiff was denied a promotion to the position of GS-15, Assistant Special Agent in Charge (ASAC), Vacancy Announcement No. DAL-INV-10028383-MP-ET. (Comp. ¶20). On December 1, 2017, Plaintiff claims a co-employee was elevated to Plaintiff's first-line supervisor despite numerous complaints of harassment. (Comp. ¶21).

In addition to the above actions, Plaintiff was treated differently than other Group supervisors in the same position because she was not be notified about executive meetings while other male Group Supervisors were invited and allowed to attend. (Comp.¶22).

1  Plaintiff asserts that the above actions were taken to discriminate and retaliate against her
2  for her prior EEO complaints/actions which consisted of filing grievances and pursuing
3  remedies for acts she believed violated constitutional and other protected activities. (Comp.
4  ¶23).
5        On May 15, 2017, Plaintiff initiated contact with the Agency's EEO office, alleging
6  "RETALIATION BECAUSE OF PREVIOUS EEO ACTIVITY/CONTINUATION OF
7  SEXUAL DISCRIMINATION (FEMALE)." (Motion Ex 1; see also Ex. 2 (Counselor's
8  Report)). On August 23, 2017, Plaintiff filed a formal charge of discrimination with her
9  agency's Equal Employment Opportunity Office (EEO).  (Mot. Ex. 3).
10       On October 28, 2019, an Administrative Judge with the Equal Employment
11 Opportunity Commission (EEOC) issued a Decision and Order, granting the Agency's
12 motion for summary judgment on Plaintiff's EEO complaint.  (Mot. Ex. 10.) On December
13 4, 2019, the DHS Office for Civil Rights and Civil Liberties (CRCL) issued a Final Order,
14 implementing the Administrative Judge's decision and finding that the Agency was entitled
15 to summary judgment as a matter of law.  (*Id*.)
16       Plaintiff asserts three causes of action against Defendants: (1) race and sex
17 discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) retaliation in
18 violation of Title VII of the Civil Rights Act of 1964; and (3) intentional infliction of
19 emotional distress. Plaintiff seeks $500,000 in actual and compensatory damages against
20 Defendant including lost earnings, employee benefits, and reasonable attorney's fees.
21       Defendant filed the present motion to dismiss, arguing the Court lacks jurisdiction
22 because Plaintiff failed to exhaust her administrative remedies, Plaintiff's IIED claim is
23 preempted by Title VII, and even if not, Plaintiff failed to administratively exhaust a tort
24 claim under the FTCA, and Plaintiff's request for compensatory damages exceeds the
25 statutory cap imposed by Title VII. Plaintiff opposes the motion. The matter is fully briefed.
26 For the reasons set forth below, the Court grants Defendant's motion to dismiss.
27 //
28 //

## II. LEGAL STANDARD

### A. Motion to Dismiss

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the motion. Fed. R. Civ. P. 12(b)(1). Jurisdiction is not presumed, and the party asserting jurisdiction has the burden to establish that it exists. *Kokkonen v. Guardian Life. Ins. Co. of America*, 511 U.S. 375, 377 (1994).

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).[1] Dismissal is warranted where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Alternatively, a complaint may be dismissed if it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs' allegations must provide "fair notice" of the claim being asserted and the "grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations and construe them most favorably to the nonmoving party. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006). However, legal conclusions need not be taken as true merely because they are couched as factual allegations. *Twombly*, 550 U.S. at 555. Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

//
//

---

[1] Unless otherwise noted, internal quotation marks, ellipses, brackets, citations and footnotes are omitted from all quotations.

### III. DISCUSSION

Defendants move to dismiss Plaintiff's complaint arguing that (1) the Court lacks jurisdiction over Plaintiff's complaint because she did not administratively exhaust her race discrimination claim with the EEO; (2) Plaintiff's intentional infliction of emotional distress claim is preempted by Title VII, and if not, she has failed to administratively exhaust a tort claim under the FTCA; and (3) Plaintiff's claim for compensatory damages should be dismissed because it exceeds the statutory cap. The Court discusses each issue in turn.

#### A. Jurisdiction and Administrative Exhaustion

Discrimination in employment on the basis of race, color, religion, sex, or national origin is prohibited under Title VII of the Civil Rights Act of 1964. 78 Stat. 255, 42 U.S.C. § 2000e–2(a)(1). Retaliation against persons who assert rights under the statute is also prohibited. § 2000e–3(a). Before a complainant may file a Title VII action in court, he or she must submit a charge with the the Equal Employment Opportunity Commission (EEOC). § 2000e–5(e)(1), (f)(1). Filing a timely charge with the EEOC is required to exhaust administrative remedies for Title VII violations, including discrimination and retaliation. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2004). Title VII's requirement to file a complaint with the EEO before commencing an action in court is considered a "claim-processing" rule, rather than a "charge-filing" jurisdictional requirement. *See Fort Bend County, Texas v. Davis*, 139 S.Ct. 1843, 1846 (2019).

Defendant contends that the Court should dismiss Plaintiff's race/national origin discrimination claim because she did not properly exhaust this claim by filing it along with her sex discrimination and retaliation claims with the EEO. (Mot. at 6). Defendant argues that Plaintiff's complaints to the EEO made no mention of race or national origin discrimination, nor was it included in any of her amendments to the EEO complaint. (*Id*. at 7). As a result, DHS did not investigate any claim of race or national origin discrimination, and the final decision of DHS does not refer to or analyze a claim for race or national origin discrimination. (*Id*.) Defendant claims the Court lacks jurisdiction on

this claim because Plaintiff did not "substantially comply with the presentment requirement." (*Id.*)

Plaintiff does not dispute that she failed to raise a claim of race or national origin discrimination in any of her EEO complaints, but contends that the Court should permit her to assert the current claims because they are reasonably related to the sex discrimination claims she raised in her EEO complaints. (Oppo. at 8). Plaintiff claims that the Court must look to the facts as alleged in not only the EEO complaints, but the pre-complaint questionnaire, because the facts supporting her sex discrimination claims also support her claims for race or national origin discrimination. (*Id.* at 7). According to Plaintiff, race discrimination often manifests as sex discrimination, therefore, the claims are closely related to the allegations made in the EEO charges. (*Id.* at 8).

"Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Lyons v. England*, 307 F.3d 1192, 1103-04 (9th Cir. 2002). The Court looks to the scope of the administrative charge to determine the appropriate scope of the subsequent civil action. *Id.* To determine whether a claim under Title VII is reasonably related to claims in a prior EEO charge, a court must determine whether the original EEO investigation would have "encompassed the additional charges." *Green v. Los Angeles County Superintendent of Schools*, 883 F.3d 1472, 1476 (9th Cir. 1989). Charges filed before the EEO are to be construed liberally due to "[t]he remedial purpose of Title VII and the paucity of legal training among those whom it is designed to protect." *Stache v. International Union of Bricklayers and Allied Craftsmen*, 852 F.2d 1231, 1233 (9th Cir. 1975).

Plaintiff alleged only sex discrimination and retaliation for prior EEO activity in her initial EEO contact, formal complaint, and amendments. (Mot. Ex. 1, 2, 3-5, 7). Although the dates and locations of the alleged discrimination, along with the named perpetrators, were purportedly the same for both claims, the EEO was not on notice to conduct an investigation into the alleged race discrimination. *Rodriguez v. Airborne Express*, 265

F.890, 897 (9th Cir. 2001)(claims of race discrimination would not reasonably trigger investigation into disability discrimination because "claims involve totally different kinds of allegedly improper conduct, and investigation into one claim would not likely lead to investigation of the other.") The final DHS Investigative Report demonstrates that the agency focused its inquiries and interviews on whether Plaintiff was the subject of sex discrimination, and retaliation, but no mention of race, or inquiry surrounding race or national origin, was made. *See* Mot. Ex 9.  The EEO investigation would likely have been different if a race discrimination claim was added to the EEO complaint, with the agency conducting an examination of the race and national origin of the alleged perpetrators. While the Court construes the facts supporting Plaintiff's sex discrimination claims raised with the EEO liberally, they were not reasonably related to claims of race discrimination to put DHS or the EEO on notice to make sufficient inquiry.

Accordingly, Plaintiff failed to exhaust administrative remedies with respect to her claim for race or national origin discrimination because that claim falls outside the scope of her timely administrative complaint alleging sex discrimination.  The Court grants Defendant's motion to dismiss this claim for Plaintiff's failure to satisfy the claim-processing procedural requirement of Title VII. *See Fort Bend County*, *Texas*, 139 S.Ct. at 1846.

### B.   Intentional Infliction of Emotional Distress

Defendant claims that Plaintiff's Intentional Infliction of Emotional Distress (IIED) claim is properly characterized as a tort claim under California law.  (Mot. at 7).  Further, Defendant contends that the Federal Tort Claims Act (FTCA) is the exclusive remedy for tortious conduct by any employee of the federal government, therefore, the claim is improper because Plaintiff did not name the United States as defendant.  (*Id*.) In addition, Defendant argues that the claim is preempted by Title VII, which can only be supplemented by state law tort claims where the alleged violations involve "physical or emotional injuries that are highly personal," such as rape, assault, or physical abuse, quoting *Sommatino v. United States*, 255 F.3d 704, 711 (9th Cir. 2001). (*Id*. at 8).  The facts supporting Plaintiff's

sex discrimination claim with the EEO do not rise to the level required for the exception to Title VII's preemption to apply, according to Defendant. (*Id*.) Finally, Defendant argues that the Court does not have jurisdiction because all FTCA claims must be exhausted prior to filing in federal court but Plaintiff's IIED claim was not administratively exhausted. (*Id*. at 8-9).

Plaintiff claims she suffered "humiliation, mental anguish, and emotional and physical distress" due to the actions of her supervisory chain of command, for which she seeks damages in excess of $500,000. (Complaint ¶¶ 43, 44). She argues that her IIED claim does not require administrative exhaustion and is not preempted by the FTCA because "[f]ederal Courts sit in diversity as to an IIED claim, therefor[sic] the court must apply California's choice of law rules to determine the controlling substantive law, including the applicable statute of limitations." (Oppo. at 10). She contends the Court should deny Defendant's motion to dismiss because she has sufficiently asserted a claim under controlling state law. (*Id*. at 11-12).

As a primary matter, the federal court does not maintains diversity jurisdiction over Plaintiff's IIED claim. "Diversity jurisdiction requires complete diversity between the parties—each defendant must be a citizen of a different state from each plaintiff." *In re Digimarc Corp. Derivative Litig*., 549 F.3d 1223, 1234 (9th Cir. 2008). An agency such as DHS is not considered to be a citizen of any particular state for purposes of diversity. *See Hancock Fin. Corp. v. Fed.Sav.& Loan Ins. Corp*., 492 F.2d 1325, 1329 (9th Cir. 1974). As a result, agencies of the United States cannot be sued in diversity. *General Ry. Signal Co. v Corcoran,* 921 F.2d 700, 703 (7th Cir. 1991).

In contrast, federal question jurisdiction requires that the complaint (1) arise under a federal law or the U.S. Constitution, (2) allege a "case or controversy" within the meaning of Article III, § 2 of the U.S. Constitution, or (3) be authorized by a federal statute that both regulates a specific subject matter and confers federal jurisdiction. *Baker v. Carr*, 369 U.S. 186, 198 (1962). Plaintiff's claim of race or national origin discrimination is properly before this Court under federal question jurisdiction, because she alleged Defendant

violated Title VII and the FTCA, federal statutes. § 704(a), 42 U.S.C.A. § 2000e–3(a); 28 U.S.C. §2679(b)(1).

The United States government, along with its agencies and employees, is immune from suit as a sovereign unless it has "expressly waived immunity and consented to be sued." *McGuire v. United States*, 550 F.3d 903, 910 (9th Cir. 2008); *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). Here, Plaintiff filed suit against the Acting Secretary of the Department of Homeland Security, thereby implicating the sovereign immunity bar.

However, the FTCA provides a waiver of sovereign immunity, and is the exclusive remedy for filing a tort action against a federal agency such as DHS. "The FTCA [Federal Tort Claims Act] is the exclusive remedy for tortious conduct by the United States, and it only allows claims against the United States. Although such claims can arise from the acts or omissions of United States agencies, an agency itself cannot be sued under the FTCA." *F.D.I.C. v. Craft,* 157 F.3d 697, 706 (9th Cir.1998).

To advance a tort claim under the FTCA, it must be administratively exhausted. *See* 28 U.S.C. §§ 2401(b), 2675(a); *Valdez-Lopez v. Chertoff*, 656 F.3d 851, 855 (9th Cir. 2011). "The timely filing of an administrative claim is a jurisdictional prerequisite to the bringing of a suit under the FTCA and, as such, should be affirmatively alleged in the complaint." *Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir. 1980)(internal citations omitted). Once a claim is exhausted, it may be asserted against the United States, but not a federal agency or individual employee. *See* 28 U.S.C. §2679(a); *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir.1998).

In her Complaint, Plaintiff does not state that she administratively exhausted her IIEED claim, nor does she present any evidence showing that it has been exhausted. *See Gillespie*, 629 F.2d at 640; *Hutchinson v. United States*, 677 F.2d 1322. 1327 (9th Cir. 1982)(FTCA claim barred based on plaintiff's failure to demonstrate administrative exhaustion of claim with federal agency). As a result, the Court does not have jurisdiction over Plaintiff's IIED claim, and Defendant's motion to dismiss the claim is granted.

//

### C.    Damages

Plaintiff seeks compensatory damages against Defendant including lost earnings, other employee benefits, past and future, in a sum exceeding $500,000.00.  (Comp. at 13).

Defendant claims that the Court should dismiss Plaintiff's request because Title VII limits the amount of compensatory damages a plaintiff may recover, with the highest cap set at $300, 000.  (Mot. at 9).  Plaintiff responds that pursuant to Section 102(a) of the Civil Rights Act of 1991, "a complainant who established unlawful discrimination may receive, in addition to equitable remedies, compensatory damages for past and future pecuniary losses and non-pecuniary losses."  (Oppo. at 13).  She further argues that backpay does not constitue damages for purposes of the cap, and front-pay is not part of the compensatory award for purposes of Title VII's damage cap. (*Id*. at 14).  According to Plaintiff, reference to "compensatory" damages as alleged in her Complaint is a misnomer, and she should be allowed to amend her Complaint, if nothing else. (*Id*.)

A statutory limitation on damages caps compensatory damages in Title VII lawsuits at $300,000, based on the size of the employer.  *See* 42 U.S.C. §1981e(b)(3).  Accordingly, Plaintiff's request for compensatory damages over $500,000 exceeds the statutory cap.  The Court grants Defendant's motion to dismiss Plaintiff's request for compensatory damages in excess of $500,000, and grants Plaintiff leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss and dismisses Plaintiff's claims without prejudice and with leave to amend.

**IT IS SO ORDERED.**

Dated:  March 30, 2021

_____
Hon. M. James Lorenz
United States District Judge